UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBORAH I. TAITT,

           Plaintiff,

                               Case No. 2:14-cv-11461
v.                           District Judge Gerald E. Rosen
                               Magistrate Judge Anthony P. Patti

MARTIN J. GRUENBERG,

           Defendant.

_____/

## REPORT AND RECOMMENDATION TO GRANT DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DE 28)

**I.**    **RECOMMENDATION**:  The Court should grant Defendant Martin J. Gruenberg's motion for summary judgment.  (DE 28.)

**II.**    **REPORT**

This case was referred to United States Magistrate Judge David Grand for all pretrial matters on October 21, 2014.  On January 13, 2015, it was reassigned from Judge Grand to me.  This matter is before me for consideration of Defendant's motion for summary judgment (DE 28), Plaintiff's response in opposition (DE 36), and Defendant's reply (DE 44.)  In addition, pursuant to my practice guidelines,

the parties filed a joint statement of material facts.  (DE 45.) For the reasons that follow, I recommend that Defendant's motion be granted.

## A. Background

### 1. Plaintiff's Employment With and Termination From FDIC

Plaintiff signed an Agreement Relating to Appointment as a Financial Institution Specialist ("FIS") with the Federal Deposit Insurance Company ("FDIC") on November 9, 2007.  (DE 36-2.)  She began her two-year trial period with the FIDC on March 3, 2008.  (DE 28-2.)   She was placed with other new employees in the Corporate Employee Program ("CEP"), a four-year training program to prepare FISs to develop functional proficiencies.  (DE 28-4.)

In the first year, FIS complete assignments in rotations including risk management, consumer rights and community reinvestment compliance, and resolutions and receiverships ("DRR").  (DE 28-4 at 3.)  They must meet certain benchmarks to rotate through the program.  (DE 28-3 at ¶ 6.)  After their first year, FIS are given the opportunity to choose one of three tracks in which they wish to be placed.  In addition to the practical training, FIS also complete computer training, and are expected to pass accounting and banking exams.  FIS are evaluated by a team of examiners during their risk and compliance rotations.  The evaluations are in the form of Developmental Feedback Forms ("DFF"), to provide the FIS input on his or her performance and identify any deficiencies.  (Id.)

2

Supervisor Evelyn Rainey served as Plaintiff's functional supervisor and coach throughout her training.  Plaintiff successfully passed her accounting tests, completed her DRR classroom training, and met her benchmarks for the DRR and compliance rotations.

Problems arose during Plaintiff's risk management rotation.  Her supervisor for the rotation was Lee Roy Candelaria, while her functional supervisor remained Evelyn Rainey, and Allen E. Clark supervised the Detroit Field Office to which Plaintiff was assigned.  (DE 28-3 at ¶ 4 and 28-28 at ¶ 2.)  Carol Kelley was assigned as her coach.  (DE 28-13 at 594.)  From the period of October 14, 2008 through October 23, 2008, she was rated in her DFF as "meets expectations," but received guidance to better organize her resources and clarify priorities.  (DE 28-11.)  Plaintiff herself noted that, although she was unable to complete the first assignment, it enabled her to familiarize herself with the new materials.  (Id. at 3.)  From January 12, 2009 through January 30, 2009, she was rated as "needs development," with notes that she would benefit from having a less "argumentative posture," as well as increasing her knowledge base, and attempting to solve problems on her own before consulting with other team members.  (Id. at 4-5.)  She was again rated "needs development" in her DFF covering February 23, 2009 through March 13, 2009 and was instructed to improve her skills in the areas of financial markets and financial analysis through self-study.  (Id at 7-8.)  In her

3

March 23, 2009 DFF, she was rated "needs development," with a note that her

earning analysis was "wrong in some instances and some of her UBPR references

were also incorrect.  She stated that NIM decreased when it increased and that the

bank was asset sensitive when it was liability sensitive."  (Id. at 10.)  She received

a similar DFF covering the period from April 6, 2009 through April 27, 2009.  (Id.

at 15-21.)

    In April 2009, Plaintiff learned that her graduation from CEP might be

delayed because of her DFF ratings.  (DE 28-6 at ¶ 6.)  On May 1, 2009,

Candelaria emailed Nancy Bitzer the following:

> Deborah Taitt has received Needs Development feedback on her
> pa[st] three assignments.  I would like to initiate a Letter of Warning
> for Performance and hold her back from graduating with her class in
> June.  She started with the CEP program on 03/03/08 a[nd] is
> currently in her last rotation in Risk.

(DE 42-2 at 43.)  On June 11, 2009, she learned that she would not be graduating

with her class.  (DE 20-1.)  On June 19, 2009, she received a Letter of Warning

("LOW"), listing her deficiencies in the various assignments, and giving her 45

days to demonstrate acceptable job performance or risk termination.  (DE 28-12.)

    Her next assignment was set to begin the week of June 22, 2009.  She did

not report on Monday, because that was her day off.  On June 23, 2009, she left a

voicemail for Rainey that she was ill and unable to report for work.  (DE 28-9 at ¶

11.)  Rainey did not hear from her again until June 25, 2009, when she emailed

4

Rainey to inform her she was out sick.  (Id.)  Plaintiff remained out of the office until after her previously approved leave, from July 1 through July 8, 2009.

Candelaria sent her an email requesting medical documentation for unexpected absences, which totaled six working days, per the leave policy.  (DE 28-20.)  Plaintiff provided a note on June 29, 2009, which stated in its entirety: "Deborah I. Taitt was seen in this office on June 24, 2009.  Her next appointment is scheduled for July 9, 2009."  (DE 28-23.)  Accordingly, Rainey emailed her on July 9, 2009, requesting documentation covering the entire period of her illness. (DE 28-24.)  On July 28, 2009, Plaintiff was advised that she was being charged with "away without leave" for two days of her absences and had until August 7, 2009 to submit the appropriate documentation.  (DE 28-25.)  Plaintiff informed Rainey that she was not sure about sending a more comprehensive doctor's note because of privacy concerns.  (DE 28-26.)  She did not send such a note.

On July 9, 2009, Plaintiff was expected to report to the Grand Rapids Field office for her next assignment, but reported to the Detroit office instead.  (DE 28-19 and 28-28 at ¶ 14.)  She was paid for her time in Detroit but was charged one hour of "away without leave" time for her commute to the Grand Rapids Office. (Id.)

On September 21, 2009, Candelaria presented Plaintiff with a termination letter, effective September 23, 2009.  (DE 28-6 at ¶ 16.)  The letter summarized

5

that, although she completed some of her rotations satisfactorily, she had

demonstrated "fundamental deficiencies in several critical areas" during her risk

management rotation, and continued to demonstrate such deficiencies after the

issuance of the LOW.  (DE 28-7.)   Plaintiff was given the opportunity to resign,

which she did on September 22, 2009.  (DE 28-8.)

### 2.   Plaintiff's EEOC Process

On June 16, 2009, after learning she would not graduate with her class,

Plaintiff contacted an EEO counselor with the following issues: 1) the graduation

decision; 2) the subjectivity of the DFFs; 3) her claim that she was told by an

examiner to wipe a smile from her face; 4) her belief that she was held to a higher

standard; and 5) her assertion that she received inadequate training.  (DE 28-16;

DE 45 at ¶ 26.)  At her initial meeting, she alleged discrimination on the basis of

race, gender (later withdrawn), and age.  (DE 28-16 at 2.)  On August 10, 2009,

she filed a formal complaint with the EEOC, alleging discrimination based on age

and race, hostile work environment, and retaliation related to her earlier EEO

activity.  (DE 28-31; DE 45 at ¶ 27.)   The parties conducted discovery and a

hearing was held on August 29, 2011.  (DE 28-33; DE 45 at ¶ 27.)   The hearing

covered the following issues: 1) whether Plaintiff was subjected to discrimination

and harassment that led to the level of a hostile work environment based on race

and age; 2) whether she was subjected to retaliation for prior EEO activity; and 3)

6

whether she was subjected to retaliation and harassment based on race and age.  It

lasted five days, produced 632 pages of exhibits, and included the testimony of

twenty witnesses. (DE 45 at ¶ 27.)  On September 30, 2011, the ALJ issued a

decision concluding that Plaintiff failed to show discrimination on the basis of

race, age, or in retaliation for prior EEO activity.  (DE 28-34; DE 45 at ¶ 28.)  The

ALJ specifically noted that Plaintiff's:

> difficulties in being successful in the Risk Management rotation were
> largely created by her.  She received the same training as other FISs.
> However, the difference between the Complainant and those who
> were successful was largely based on the successful FISs initiative,
> self-study and ambition for developmental assignments.    The
> Complainant did not exhibit these qualities and was characterized as
> difficult and argumentative, which is supported by the record.

(Id at 14.)  The ALJ thus opined that "the record is devoid of any evidence that the

Complainant was treated differently on any basis, let alone based on her race

and/or age.  Instead, the record reflects that the Complainant did not exhibit the

requisite initiative similar to other FISs . . . who successfully completed the

program."  (DE 45 at ¶ 28.)

Plaintiff, who is proceeding without the assistance of counsel, filed the

instant action on April 10, 2014, bringing claims under Title VII, 42 U.S.C. §

2000e-2 and ADEA, 29 U.S.C. § 623(a)(1), against Martin J. Gruenberg, the Chair

of the FDIC.  (DE 1.)  Defendant filed a motion for summary judgment on

December 19, 2014. (DE 28.)[1]  He argues that he is entitled to judgment as a

matter of law because Plaintiff cannot demonstrate a genuine dispute of material

fact that she was treated less favorably than her similarly situated peers, that she

was retaliated against for engaging in protected activity, and that the work

environment was hostile.  Plaintiff opposes the motion.  (DE 36.)  She asserts that

a genuine dispute of material fact exists as to all of her claims.

### C. <u>Standard</u>

Federal district courts review Title VII administrative claims *de novo*, and

are not limited to a review of the EEOC decision.  *Prince v. Com'r*, *U.S. I.N.S.*,

713 F.Supp. 984, 990-91 (E.D. Mich. 1989).  Under Federal Rule of Civil

Procedure 56, "[t]he court shall grant summary judgment if the movant shows that

there is no genuine dispute as to any material fact and the movant is entitled to

judgment as a matter of law.  Fed. R. Civ. P. 56(a).  A fact is material if it might

affect the outcome of the case under governing law.  *Anderson v. Liberty Lobby,*

*Inc.*, 477 U.S. 242, 249 (1986).  The Court "views the evidence, all facts, and any

inferences that may be drawn from the facts in the light most favorable to the

nonmoving party."  *Pure Tech Sys., Inc. v. Mt. Hawley Ins. Co.*, 95 F. App'x 132,

135 (6th Cir. 2004) (internal citations omitted).

---

[1] Defendant also filed an "amended motion for summary judgment" on February
20, 2015.  (DE 37-2.)  The only changes made were corrected citations to the
record.  Plaintiff did not object to such a filing.  Throughout the opinion, I will
refer to DE 28 for any citations to Defendant's motion and exhibits.

"The moving party has the initial burden of proving that no genuine issue of material fact exists . . . ." *Stansberry v. Air Wis. Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011) (internal quotations omitted); cf. Fed. R. Civ. P. 56 (e)(2) (providing that if a party "fails to properly address another party's assertion of fact," then the court may "consider the fact undisputed for the purposes of the motion."). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.*, 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). The nonmoving party must "make an affirmative showing with proper evidence in order to defeat the motion." *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009); *see also Metro. Gov't of Nashville & Davidson Cnty.*, 432 F. App'x 435, 441 (6th Cir. 2011) ("The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute.") (internal quotation marks and citations omitted). Summary judgment is appropriate when "a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case. . . ."

*Stansberry*, 651 F.3d at 486 (citing *Celotex Corp. v. Catrett*, 477 U.S. 371, 322-23 (1986)).

### D.  <u>Discussion</u>

Plaintiff brings her claims under Title VII, 42 U.S.C. § 2000e-2, which prohibits race-based employment discrimination, and the ADEA, 29 U.S.C. § 623(a)(1), which prohibits age-based employment discrimination against people over the age of forty.  Because Plaintiff alleges racial and age discrimination under each provision for acts arising out of the same facts and circumstances, I will consider the claims together.  *Hollins v. Atl.Co.*, 188 F.3d 652, 658 (6th Cir. 1999).  No one disputes that Plaintiff is a Black woman over the age of forty, such that she is a member of a protected class under both statutes.  (DE 45 at ¶ 1.)

As a preliminary matter, I need not consider Plaintiff's disparate impact claims, which were not raised at the EEOC.  "As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his [or her] EEOC charge."  *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010).  The Sixth Circuit has cautioned, however, "that an EEOC charge filed by lay complainants should be liberally construed because they are unschooled in the technicalities of the law and proceed without counsel."  *Tisdale v. Fed. Exp. Corp.*, 415 F.3d 516, 527 (6th Cir. 2005).  Accordingly, "[a]ctions in federal court 'should not be restricted by the failure of a complainant to attach the correct legal

10

conclusion to the EEOC claim, conform to procedural technicalities, or include the exact wording which might be required in a judicial pleading.'" *Id.* (quoting *Davis v. Sodexho, Cumberland, Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998). Instead, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis*, 157 F.3d at 463.

"It does not follow, however, that a disparate impact claim would necessarily or naturally flow from a disparate treatment charge . . . ." *Haddad v. Wal-Mart Stores E., LP*, 982 F. Supp. 2d 825, 828 (M.D. Tenn. 2013). This is because disparate impact claims "involve facially neutral employment practices that have disproportionate impact on protected classes of individuals" and "disparate treatment claims involve intentionally discriminatory employment practices." *Serrano v. Cintas Corp.*, 699 F.3d 884, 892 (6th Cir. 2012). Here, as best as I can discern, Plaintiff's disparate impact theory rests on the subjective nature of DFF evaluations. She asserts that "the record shows that the only FIS employees to receive 'needs development' DFFs were minorities and employees over the age of 40." (DE 36 at 12.) There is no indication, however, that she raised any such issue with the EEOC. The only item that could be construed as raising a claim of disparate impact with the EEOC was one note that two FIS employees terminated from the Detroit Field Office were minorities. (DE 28-31 at

11

2.)  The remainder of her EEOC claims center on the allegedly discriminatory practices of *her* supervisors in assessing *her* DFFs.  For example, Plaintiff did not assert that the FDIC leave policy disparately impacts protected employees. Instead, she argued that the leave policy was not properly followed with respect to *her own* absences due to her protected class and in retaliation for protected EEO activity.  She also notes, both here and at the EEOC, that the training practices employed by her supervisors at the Detroit Field Office did not comply with the training policy as to her, but not that the neutral training policy disparately impacted protected workers.  Accordingly, because Plaintiff's claim would not have prompted the EEOC to investigate a theory of disparate impact, her disparate impact theory need not be considered by this Court.

### 1.    <u>Disparate Treatment</u>

#### a.  **Plaintiff Fails to Make out a *Prima Facie* Case**

"The *McDonnell Douglas/Burdine* formula is the evidentiary framework applicable not only to claims brought under Title VII, but also to claims under ADEA."  *Mitchell v. Toledo Hosp.*, 965 F.2d 577, 582 (6th Cir. 1992).  Following that framework, in order to make out a claim of race discrimination under Title VII and age discrimination under the ADEA, a plaintiff must first establish a *prima facie* case of discrimination, which varies depending on the specific facts of the case. *Tartt v. Wilson Cnty., Tenn.*, 592 F. App'x 441, 445 (6th Cir. 2014) (citing

12

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Plaintiff can

establish a *prima facie* case here by showing that she: (1) is a member of a racial

minority and was over 40 at the time of the action; (2) was discharged from her

position of employment; (3) was qualified for the position; and (4) was replaced by

a person outside the class or a comparable non-protected person was treated better.

*Mitchell*, 964 F.2d at 582; *see also Newman v. Fed. Express Corp.*, 266 F.3d 401,

406 (6th Cir. 2001) (applying the *McDonnell Douglas* framework to a race

discrimination case); *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133,

142 (2000) (applying the *McDonnell Douglas* framework to an age discrimination

case under the ADEA).

        For a claim of disparate treatment, a plaintiff can make a *prima facie* case by

showing direct evidence of discrimination.  *McDonnell Douglas*, 411 U.S. at 793;

*Wexler v. White's Fine Furniture*, 317 F.3d 564, 570 (6th Cir. 2003).  Direct

evidence is evidence which, if believed, demonstrates that unlawful discrimination

was a motivation for the decision.  *Wexler*, 317 F.3d at 570.  If a plaintiff cannot

show direct evidence of discrimination, he or she may rely on circumstantial

evidence that allows a reasonable finder of fact to infer that unlawful

discrimination motivated the decision.  *Wexler*, 317 F.3d at 570 (citing *Jacklyn v.

Schering–Plough Healthcare Prods. Sales Corp.,* 176 F.3d 921, 926 (6th Cir.

1999)).

If a plaintiff establishes a *prima facie* case of race and/or age discrimination, the burden shifts to the defendant to provide a legitimate, non-discriminatory reason for the employment decision. *McDonnell Douglas*, 411 U.S. at 802. Finally, if the defendant offers such a reason, the burden returns to the plaintiff to show that the proffered reason is merely a pretext for discrimination. *Id.* at 804.

The burden of persuasion rests with the plaintiff at all times. *Hunter v. Sec'y of the Army*, 565 F.3d 986, 996 (6th Cir. 2009). To meet this burden in the Title VII context, a plaintiff must demonstrate that race was a "motivating factor" in the employer's discriminatory action. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 318 (6th Cir. 2012). In contrast, to meet his or her burden under the ADEA, a plaintiff must demonstrate that his or her age was the "but-for" cause of the employer's discriminatory action. *Id.*

Here, Defendant argues that Plaintiff fails to make a *prima facie* case because she presented no evidence to demonstrate that she was treated differently than a similarly situated individual from an unprotected class. Plaintiff asserts that she has made such a showing.

To prevail, Plaintiff must show a comparison between herself and similarly situated non-protected employees. *Stotts v. Memphis Fire Dep't*, 858 F.2d 289 (6th Cir. 1988). The Sixth Circuit has described the "similarly situated" element as follows:

14

> To be deemed "similarly situated," the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.

*Mitchell*, 964 F.2d at 583 (internal quotations and citations omitted).  This requires "that the plaintiff demonstrate that he or she is similarly-situated to the non-protected employee in all *relevant* respects."  *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir. 1998) (emphasis in original).

Plaintiff mentions the following examples in order to make such a showing:

1. That Tametria Stokely, a minority employee, was fired for speaking inappropriately, but Kristyn Beltz, who was white, was not reprimanded for saying "Take that smile off of your face" to Plaintiff.

2. That she was required to function as an Operations Manager in order to graduate, while other FIS were not.

3. That four minority FIS employees and two minority Mid-Level Trainees were terminated from the Detroit Field Office.

4. That two other minority FISs were terminated.

5. That her December 31, 2008 performance review was improperly scrutinized by management, unlike others similarly situated who were under the age of 40.

6. She points to the DFFs of two white FISs, Kristen Beltz and Andrew Minor, noting that Ms. Beltz's DFF did not mention her disrespectful comment to Plaintiff.  She further asserts that supervisors were more lenient in their

15

reviews of Beltz and Minor's performance, for example, by excusing performance limitations on the basis of their lack of training.[2]

7. That she and Brittany Sutton, a younger employee, were reprimanded for the same thing but only Plaintiff was written up as "needs development." (DE 36 at 20.)

8. That white male Joshua Zettlin was issued a LOW that did not place a 45-day time-limit on his improvement. (DE 1 at 14.)

Defendant counters that these instances either do not involve similarly situated employees or do not provide evidence that Plaintiff was treated worse than a non-protected employee. I agree with Defendant.

First, Plaintiff's use of Ms. Stokely's experience does not serve to demonstrate that *Plaintiff* was treated differently than a similarly situated employee. Even Plaintiff concedes that Ms. Stokely was terminated *only in part* for speaking inappropriately to another employee. (DE 36 at 5.) The evidence bears this out, as Ms. Stokely's termination letter lists a variety of serious reasons for her termination that had nothing to do with the incident Plaintiff describes. In contrast to the isolated incident in which Ms. Beltz allegedly told Plaintiff to "Take that smile off of your face"– a comment which in fact may be *entirely justified* in the context of an employee who is being inappropriately sarcastic, snarky or spurious – Ms. Stokely was disciplined for an assortment of failings, which her regional director noted to have been "[t]aken in totality," including: inappropriately

---

[2] Plaintiff does not, however, provide Beltz and Minor's DFFs as part of the evidence in the record.

16

accepting a handful of bank pens offered by a teller so as to create an appearance of undue influence over a bank employee; inappropriate use of a photocopy machine to make approximately 100 copies of personal documents; disruptive behavior toward fellow employees; and, treating "a less experienced employee poorly and assert[ing] much more authority than was needed." (DE 36-4.) Given these obvious differences between the two cases, the employees being compared can hardly be characterized as "similarly situated."

Second, as Defendant notes, Brittany Sutton, an African American woman under the age of 40, was also required to serve as Operational Manager during her rotational year, making Plaintiff's assertions that only she was required to undergo this requirement incorrect. (DE 28-37.)

Third, to the extent Plaintiff asserts that the Detroit Field Office routinely eliminated minority employees, the evidence shows that only one other FIS minority employee was terminated and does not demonstrate that *Plaintiff* was treated differently than any similarly-situated non-protected employees. (DE 36-5.) Moreover, Plaintiff has not demonstrated that the termination of another minority employee is statistically significant to permit an inference of discrimination. The Sixth Circuit has found that, "for statistics to be valid and helpful in a discrimination case, both the methodology and the explanatory power of the statistical analysis must be sufficient to permit an inference of

17

discrimination." *Simpson v. Midland-Ross Corp.*, 823 F.3d 937, 944 (6th Cir. 1987) (internal quotations and citations omitted). A sample that is too small "can undermine the probative value of the statistical evidence." *Tinker v. Sears, Roebock & Co.*, 127 F.3d 519, 524 (6th Cir. 1997). "Unless the statistics, standing alone or in comparison, are sufficient to lead the mind naturally to the conclusion sought, they have no probative value . . . ." *Simpson*, 823 F.3d at 944.[3] Here, the termination of one other minority employee is not sufficient to lead the mind to an inference of discrimination.

Finally, and most importantly, Plaintiff presents no competent evidence to demonstrate her other assertions. Although she believes she was treated unfairly on the basis of her age and race, she does not point the Court to another, similarly situated non-protected employee who received more favorable treatment than Plaintiff did. For example, while Plaintiff asserts that her December 31, 2008 performance review was "later scrutinized by management," unlike similarly situated non-protected peers, she fails to note that this is because she was issued a Letter of Warning. To demonstrate that supervisors review earlier performance reviews and DFFs when issuing a Letter of Warning and that such scrutiny was not based on Plaintiff's race or age, Defendant provides the Letters of Warning for three younger white employees and one younger African American employee in

---

[3] For comparison, there were 17 departing employees in the sample in *Simpson* and 13 in the sample in *Tinker*.

which the employees' supervisors reviewed their past performance reviews and

DFFs in the same way Plaintiff's past performance was reviewed in her Letter of

Warning.  (DE 44-1.)  Plaintiff has adduced no competent evidence to dispute

Defendant's point that supervisors scrutinize the prior performance reviews and

DFFs (if applicable) of *all* employees who receive Letters of Warning, regardless

of their age or race.  Accordingly, Plaintiff cannot meet this element of the *prima*

*facie* case and her claim therefore fails.

### b. Plaintiff Fails to Rebut Defendant's Legitimate, Non-Discriminatory Reasons for Her Termination

Even assuming *arguendo* that Plaintiff could make a *prima facie* case,

Defendant has presented a legitimate, non-discriminatory reason for terminating

her employment: the evidence contains detailed records of Plaintiff's poor

performance and attendance issues.  Defendant's records reflect legitimate,

nondiscriminatory reasons for Plaintiff's termination "'which if believed by the

trier of fact, would support a finding that unlawful discrimination was not the

cause of the employment action.'"  *Wright v. Murray Guard, Inc.*, 455 F.3d 702,

707 (6th Cir. 2006) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507

(1993)).

Accordingly, Plaintiff must present evidence sufficient to establish that

Defendant's proffered reason was mere pretext for discrimination in order to defeat

his motion for summary judgment.  The Sixth Circuit provides that a plaintiff may

establish that the employer's proffered reason was mere pretext by showing:

> 1)    the stated reasons had no basis in fact;
>
> 2)    the stated reasons were not the actual reasons; and
>
> 3)    that the stated reasons were insufficient to explain the
>         defendant's actions.

*Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 573 (6th Cir. 2000).  "A reason

cannot be proved to be a pretext for discrimination unless it is shown both that the

reason was false and that discrimination was the real reason."  *St. Mary's Honor*

*Ctr. v. Hicks*, 509 U.S. 502, 515 (1993).  Furthermore, "the aim is not to . . .

question the soundess of an employer's judgment," where an employee is not

performing to the employer's satisfaction.  *McDonald v. Union Camp Corp.*, 828

F.2d 1155, 1160 (6th Cir. 1990).

Here, Plaintiff has presented no evidence to demonstrate that Defendant's

performance-related justification for her termination was pretext for

discrimination.  *See Manzer v. Diamond Shamrock Chemicals, Co.*, 29 F.3d 1078,

1083 (6th Cir. 1994) (overruled on other grounds) ("The jury may not reject an

employer's explanation . . . unless there is a sufficient basis in the evidence for

doing so.").  Further, Plaintiff's speculation that Defendant's reasons for her

termination were pretextual, and her questioning of the subjective nature of the

DFFs, is not enough to survive summary judgment.  *See Brennan Tractor Supply*

20

*Co.*, 237 F. App'x 9, 19-20 (6th Cir. 2007) ("[M]ere conjecture that [the] employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment . . . .  [A] court may not reject an employer's explanation [of its actions] unless there is sufficient basis in the evidence for doing so." (internal citations omitted)).  Plaintiff makes no showing that this well-documented, sub-par performance did not occur and has presented no evidence to demonstrate that these reasons are pretextual.[4]  Plaintiff therefore cannot prevail on her disparate treatment claim.

### 2.    **Retaliation**

To establish a *prima facie* case of retaliatory discharge, a plaintiff must demonstrate that 1) he or she engaged in activity protected by Title VII; 2) that the defendant knew about this protected activity; 3) that defendant took an adverse employment action against the plaintiff; and 4) that there was a causal connection between the protected activity and the adverse employment action.  *Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir. 1990).  If the plaintiff establishes a *prima facie* case, the burden of production shifts to the employer to

---

[4] For example, in their Joint Statement of Facts, it is pointed out that her performance deficiencies "were noted at bank exams starting in October 2008 . . . ."  (DE 45 at ¶ 12.)  While Plaintiff takes issue with the knowledge base of the people who evaluated her, and insinuates that Belz had a vendetta against her, she does not claim that the evaluation was inaccurate.  (Id.)  The thrust of her motion response complains about the process either being poor or not followed, without demonstrating that her performance and attendance was in fact adequate.

articulate a "legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802. Plaintiff then must demonstrate that "the proffered reason was not the true reason for the employment decision." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

Here, Plaintiff asserts that she was retaliated against for a variety of reasons. For example, she asserts that Beltz gave her a less favorable DFF after Plaintiff told Beltz that her "wipe the smile off your face" comment was inappropriate. However, such activity is not protected under Title VII and therefore any resulting retaliation could not support a retaliation claim. *See* 42 U.S.C. § 20003-3(a). In fact, the only protected activity described by Plaintiff was her June 16, 2009 meeting with the EEO after being informed that she would not graduate with her class. As Defendant points out, Plaintiff presented evidence demonstrating that the email initiating Plaintiff's LOW was sent on May 1, 2009, well before she engaged in protected activity. (DE 42-2.) Therefore, to the extent Plaintiff asserts that the LOW was generated in retaliation for her EEO activity, such an argument is without merit.

She also asserts that Clark's changing of her sick leave to AWOL and subsequent dock in her pay was in retaliation for her EEO activity, but fails to demonstrate a causal connection between her protected activity and the enforcement of the FDIC Leave Policy. *See Cooper v. City of North Olmstead*,

22

795 F. 2d 1265, 1272 (6th Cir. 1986) (requiring direct evidence linking the adverse employment action to the protected activity where an employee is cited for work violations both before and after engaging in protected conduct).

Even assuming she can make a *prima facie* case on this element, her claim fails because Defendant has come forward with evidence demonstrating that the decision was made *pursuant to the FDIC Leave Policy*, which states that "In case of absence on sick leave for more than 3 workdays for the same medical condition, the employee shall submit a certificate from a health care provider . . . pertinent to the specific instance for which sick leave is being used."  (DE 28-40 at 9.) Plaintiff was reprimanded pursuant to the policy for missing a total of six workdays and providing a doctor's note for only one day, pursuant to the policy. This is not evidence of retaliation.  *See Walborn v. Erie Cnty. Care Facility*, 150 F.3d 584, 589 (6th Cir. 1998) ("An employee's work violations constitute a legitimate, nondiscriminatory reason for adverse employment decisions.").

Finally, Plaintiff's assertion that she was paid for only 45 of her 63 hours of work during her last employment period was retaliatory is without merit. Defendant presents a sworn affidavit from Candelaria indicating that the failure to pay was an administrative error that had been corrected.  (DE 28-3 at ¶ 16 and DE 28-41 at 3.)  Plaintiff presents no evidence to the contrary. Accordingly, Plaintiff cannot prevail on a claim for retaliation.

23

### 3.   **Hostile Work Environment**

Title VII is violated when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations omitted). "In order to establish a hostile work environment claim, a plaintiff must present evidence of harassment that unreasonably interferes with his [or her] performance and creates an objectively intimidating, hostile, or offensive work environment." *Younis*, 610 F.3d at 362. The severity and pervasiveness of the hostile conduct is based on the totality of the circumstances. *Williams v. General Motors Corp.*, 187 F.3d 553, 562 (6th Cir. 1999).

As an initial matter, Plaintiff does not make clear whether she is alleging hostile work environment on the basis of race, age, or retaliation. Nevertheless, the tests are relatively similar and turn on the same issue and will be considered together. First, to succeed on a claim of a "racially hostile work environment," a plaintiff must demonstrate that:

> (1) she belonged to a protected group, (2) she was subject to unwelcome harassment, (3) the harassment was based on race, (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (5) the defendant knew or should have known about the harassment and failed to act.

24

*Williams v. CSX Transp. Co.*, 643 F.3d 502, 511 (6th Cir. 2011).  Similarly, to

succeed on a claim of age-related hostile work environment, the plaintiff must

demonstrate that he or she: (1) is 40 or older, (2) was subjected to harassment,

either through words or actions, based on age, (3) the harassment had the effect of

unreasonably interfering with the employee's work performance and creating an

objectively intimidating, hostile, or offensive work environment, and (4) there is

some basis for liability on the part of the defendant.  *Crawford v. Medina Gen.*

*Hosp.*, 96 F.3d 830, 834-35 (6th Cir. 1996).  Finally, in to demonstrate hostile

environment on the basis of retaliation, Plaintiff must demonstrate that: (1) she

engaged in activity protected by Title VII, (2) her employer knew about the

protected activity, (3) she was subjected to severe or pervasive retaliatory

harassment by a supervisor, and (4) there was a causal connection between the

protected activity and the harassment.  *Morris v. Oldham Cnty. Fiscal Court*, 201

F.3d 784, 792 (6th Cir. 2000).

Plaintiff asserts that the environment was hostile because of the subjective

use of the DFFs, her placement on AWOL status, and efforts to terminate her from

employment.  She contends that supervisors used their positions to bully her

because of her age and her race, the FDIC knew of the harassment but failed to

stop it, corporate policies were misapplied as to Plaintiff, and she was forced to

perform assignments that other FIS were not. She does not provide any specific

25

instances, concedes that there were no race or age based threats used against her, and indicates that the environment was hostile because of vaguely alleged "covert systematic actions by those in a supervisory capacity." (DE 36 at 24.) In short, she repeats her disparate treatment claims and asserts that these same alleged activities created a hostile working environment.

The totality of the circumstances do not demonstrate a hostile working environment. The evidence shows that Plaintiff began her training moderately successfully, working through her first two rotations without incident. When she began her risk management rotation, her DFFs began to note consistent performance issues, including her argumentative reactions to feedback and assignments, her lack of knowledge about the subject matter, and the mistakes she made when completing assignments (if, in fact, the assignment was completed at all). Again, Plaintiff presents no evidence to contradict this litany of unfavorable criticism, and even if she had, it would not serve to demonstrate a cognizable claim for hostile work environment because she does not provide evidence of (or even fully explain) what she believes constituted a hostile work environment on the basis of her race, age, or in retaliation for protected activity. For example, her negative feedback on DFFs began long before her initial appointment with the EEO and therefore Plaintiff does not demonstrate a causal connection for the purposes of retaliation. The record does not contain any indication that a

26

reasonable person would perceive Plaintiff's working environment, in which she was given consistent feedback on ways to improve her job performance, to be hostile or abusive. *See Harris*, 510 U.S. at 21. Nor does Plaintiff offer evidence of any comments or treatment by her supervisors or co-workers which could give rise to an inference of racial, age-related or retaliatory animus. Accordingly, Plaintiff has failed to demonstrate the existence of a hostile work environment actionable under Title VII.

### D.   Conclusion

Plaintiff has failed to set forth a genuine dispute of material fact as to any of the claims brought under Title VII and the ADEA. I therefore recommend that the Court **GRANT** Defendant's motion for summary judgment.

## III.   PROCEDURE ON OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1981). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health &*

27

*Human Servs.*, 932 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1273 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," and "Objection No. 2," *etc.*  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed. R. Civ. P. 72(b)(2); E.D. Mich LR 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," *etc.*  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Dated: August 12, 2015          s/Anthony P. Patti
                                Anthony P. Patti
                                UNITED STATES MAGISTRATE JUDGE

I hereby certify that a copy of the foregoing document was sent to parties of record on August 12, 2015, electronically and/or by U.S. Mail.

                                s/Michael Williams
                                Case Manager for the
                                Honorable Anthony P. Patti

28